# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JASON S. H.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | )    **CIVIL ACTION** |
| v. | ) |
| | )    **No. 22-1047-JWL** |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Supplemental Security Income (SSI) benefits pursuant to Title XVI, sections

1602 and 1614 of the Social Security Act, 42 U.S.C. §§ 1381a, and 1382c (hereinafter the

Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court

ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C.

§ 405(g) AFFIRMING the Commissioner's final decision.

## I.      Background

Plaintiff protectively filed applications for Disability Insurance Benefits (DIB) and

SSI benefits on May 9, 2019.  (R. 11, 153, 160).  After exhausting administrative

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

remedies before the Social Security Administration (SSA), Plaintiff filed this case

seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).[2]

Plaintiff claims the ALJ erred in relying on a medical opinion which conflicted with a

worsening of symptoms, failed to resolve the conflict, and failed to explain how the

record evidence did not support Plaintiff's allegations.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052

(10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he

findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual

findings are supported by substantial evidence in the record and whether he applied the

correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to

the weight, not the amount, of the evidence.  It requires more than a scintilla, but less

than a preponderance; it is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see

also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-

Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

---

[2] Although Plaintiff applied for both DIB and SSI benefits, through counsel at the
hearing, he amended his alleged onset date to May 9, 2019, and withdrew his request for
hearing on the Title II (DIB) claim.  (R. 57-58).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

3

assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II.      Discussion

### A.      Conflict Between A Medical Opinion and Subsequent Evidence

Plaintiff claims the ALJ violated the requirements of Social Security Ruling (SSR) 96-8p by finding persuasive the opinion of the state agency medical consultant, Dr. Bland, without resolving the conflict between her opinion[3] and evidence the condition of

---

[3] Dr. Bland's medical opinion is properly called a "Prior administrative medical finding," a term of art referring to the findings of state or federal agency physicians or psychologists about a medical issue at an earlier level of review.  20 C.F.R. § 404.1513(a)(5).  Although the term is broader in scope than a "medical opinion," id. at § 404.1513(a)(2), the terms are often used interchangeably and the court will follow that practice in this case except when necessary to draw a distinction.

Plaintiff's spine impairment worsened thereafter.  (Pl. Br. 8).  Plaintiff argues that after

Dr. Bland rendered her opinion in October 2019, Plaintiff

> began reporting an increase in symptoms and objective evidence document
> a worsening of his condition.  He subsequently received an MRI of the
> thoracic spine in February 2020 revealing moderate and severe
> abnormalities, and his providers recommended additional treatment
> modalities.  Examinations revealed abnormalities such as tenderness to
> palpation of the spine, limited range of motion of the spine, pain with range
> of motion of the spine, antalgic gait, positive straight leg raise, crepitus and
> tenderness of the right knee, positive facet loading, spinal muscle spasms,
> and ambulation with a cane.

Id. at 9 (citations to the record omitted).

Plaintiff argues the record shows that after Dr. Bland's opinion "he report[ed] an

increase of symptoms, … pursued and obtained additional treatment modalities, and []

received referrals to specialists" which demonstrate a material change in his condition

and preclude the ALJ's reliance on Dr. Bland's opinion.  Id. 10 (citing Kenneth M. v.

Kijakazi, Civ. A. No. 20-1307-JWL, 2021 WL 3710024, at *5 (D. Kan. Aug. 20, 2021)).

Plaintiff acknowledges the ALJ summarized and considered the evidence produced after

Dr. Bland's opinion, but argues he failed to explain how the evidence was consistent with

her opinion.  Id.  He argues, "It is unclear how this additional evidence could be

consistent with the consultant's opinion for light work when the consultant based very

little, if any, of her opinion on [Plaintiff]'s spine impairment."  Id.

Plaintiff argues, "While the ALJ briefly acknowledged that the record documented

some abnormalities, he chose to narrowly focus [sic] on normal findings in the record and

downplay the significance of the abnormal findings."  Id. a 11 (citing R. 19).  He argues

this view does not support finding consistency between the opinion and the evidence.  Id.

The Commissioner disagrees, arguing, "While the record shows that Plaintiff began presenting with more complaints of back pain later during the relevant time period (i.e., in 2020 and 2021), nothing in the record suggests that his back pain appreciably worsened after Dr. Bland's review." (Comm'r Br. 6). She points out the ALJ reviewed all of the records, including the subsequent records at issue and noted relatively conservative treatment, and that Plaintiff did not pursue physical therapy for his back condition. Id. 6-7. Finally, she argues the ALJ did not unfairly cherry-pick the evidence and over-emphasize normal findings but summarized both normal and abnormal findings. Id. 7.

### 1.     The ALJ's Findings Regarding Plaintiff's Back Condition

The ALJ discussed the evidence regarding Plaintiff's back condition:

The claimant also alleged disability due to degenerative changes in his back. (Testimony). However, imaging studies of the claimant's thoracic spine demonstrated only moderate thoracic spondylosis, with disc protrusions at T6-10 with mild encroachment upon the cord but no cord contact, mild bilateral foraminal stenosis at T5-6 and T8-9 and on the left at T6-7, and moderate to severe bilateral foraminal stenosis and arthropathy from T9-10 through T11-12. (Exhibit B34F, pages 10-12). In addition, on an MRI of his lumbar spine, he was noted to have L3-4 mild facet hypertrophy with minimal bilateral neural foraminal narrowing and no central canal stenosis, L4-5 facet hypertrophy with no central protrusion, minimal central canal stenosis, and moderate to severe right and moderate left neural foraminal stenosis, and L5-S1 right central disc protrusion narrowing the right lateral recess with no central canal stenosis, severe right neural foraminal stenosis with impingement on the exiting right L5 nerve root, and severe left neural foraminal stenosis. (Exhibit B39F, page 32).

The claimant's physical examinations have revealed only a few intermittent objective abnormalities, such as on occasionally antalgic gait or sporadically reduced range of motion. However, he was often observed to have a normal gait and station, normal muscle bulk and tone with no atrophy, normal muscle strength, intact sensation, normal reflexes, good

balance, and ability to walk on heels and toes and do a heel-to-toe walk. (Exhibits B6F, pages 4-5 and 10, B12F, page 11, B13F, pages 7, 12, 17, 22, and 27, B15F, pages 8, 23, and 41, B22F, page 3, B24F, page 1, B26F, page 4, B27F, page 4, B32F, pages 11 and 16, B33F, page 4, B38F, page 3, B39F, pages 3, 7, 13, 18, and 22, B42, page 3, B44F, pages 7, 18, 24, and 29, and B45F, pages 18-19)  The claimant's pain management provider also noted during one visit that while he was reporting his pain as an 8 out of 10 at that time, he was "able to sit completely still during triage, converse with ease and shows no signs/symptoms of acute pain or distress such as facial grimacing, etc." (Exhibit B36F, page 15)  In addition, contrary to the claimant's assertion that he has to use a cane all the time, every day, he told his physician in October 2020 that he only used a cane intermittently.  (Exhibit B42F, page 2).  There is no indication in the record that a cane was ever prescribed, and there are no objective findings on examination, such as balance issues or weakness of the lower extremities, that would provide objective support for the claimant's assertion that he needs a cane to ambulate.

The claimant has also required relatively conservative treatment for his back pain during the relevant period.  In February 2020, he had thoracic trigger point injections, followed be [sic] diagnostic thoracic medial branch blocks in March 2020.  (Exhibit B36F, pages 2 and 13).  Although thoracic radiofrequency ablation was discussed, there is no record of this having been performed.  (Exhibit B36F, page 17).  The claimant does not appear to have returned to the pain management clinic after March 2020.  He later admitted that he had been given a prescription for physical therapy but had not called to get it scheduled.  (Exhibit B39F, page 3).  There are no records indicating that the claimant has had any injections in his lumbar spine, has participated in physical therapy for his thoracic or lumbar spine during the relevant period, or has been considered a surgical candidate for his back impairment.  The overall evidence of record does not support the degree of limitation the claimant alleged due to this condition.

(R. 19-20).

The ALJ also explained his evaluation of Dr. Bland's opinion:

Judee Bland, M.D., reviewed the evidence of record initially in July 2019 and opined that the claimant would be capable of performing light work but limited to standing and walking two hours a day, a finding that she subsequently revised to a fuller range of light work including standing and walking six hours a day after subsequently reviewing additional evidence of record in September 2019.  (Exhibits B1A, pages 4-7, and B4A, pages 7-

10).  Dr. Bland's final finding in September 2019 is supported by her own
analysis and is consistent with the other evidence of record as discussed in
detail above, including the claimant's cardiac testing, imaging studies,
venous ultrasounds, and objective physical examinations as well as the
level of treatment he has required for his impairments during the relevant
period.  (Exhibits B6F, pages 4-5 and 10, B12F, page 11, B13F, pages 7,
12, 17, 22, and 27, B15F, pages 8, 23, and 41, B22F, page 3, B24F, page 1,
B26F, page 4, B27F, page 4, B32F, pages 11 and 16, B33F, page 4, B38F,
page 3, B39F, pages 3, 7, 13, 18, and 22, B42, page 3, B44F, pages 7, 18,
24, and 29, and B45F, pages 18-19)  This finding is therefore generally
persuasive.

(R. 21).

## 2.    Analysis

Plaintiff's argument misunderstands the ALJ's responsibility with respect to

evaluating medical opinions.  Plaintiff cites SSR 96-8p for the proposition that it is error

for an ALJ to find a medical opinion persuasive without reconciling conflicts between the

opinion and record evidence (at least later-provided evidence).  (Pl. Br. 8).  As Plaintiff

suggests, SSR 96-8p provides a narrative discussion requirement that an ALJ must

support his RFC assessment with specific medical facts and nonmedical evidence to

describe how the evidence supports each conclusion in his RFC, discuss how the claimant

is able to perform sustained work activities, and describe the maximum amount of each

work activity the claimant can perform.  1996 WL 374184, *7 (SSA July 2, 1996).  The

discussion must include an explanation how any ambiguities and material inconsistencies

in the evidence were considered and resolved.  Id.  The narrative discussion must include

consideration of a claimant's allegations of symptoms and consideration of medical

opinions regarding the claimant's capabilities.  Id.  If the ALJ's RFC assessment conflicts

with a medical source opinion, he must explain why he did not adopt the opinion.  Id.

8

The Ruling requires the ALJ to consider and address medical source opinions. The ALJ did so. He considered and addressed the opinions of Dr. Bland and Nurse-practitioner Minkevitch. (R. 21). He found Mr. Minkevitch's opinion not persuasive and, as quoted above, he found Dr. Bland's opinion generally persuasive, and he provided reasons for his findings, fulfilling the Ruling's requirement that he explain why he did not adopt an opinion that conflicts with the RFC he assessed—Mr. Minkevitch's opinion, and Dr. Bland's opinion to the extent he did not adopt it and found it only generally persuasive. Plaintiff points to no requirement that an ALJ explain why (or explain that) a medical opinion is consistent with all record evidence.

Plaintiff is correct that the Ruling requires an ALJ to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p 1996 WL 374184, *7. But the Ruling does not require the ALJ to resolve ambiguities or inconsistencies between a medical opinion and other record evidence. As noted above, the ALJ explained his reasons for finding Dr. Bland's opinion "generally persuasive," and as Plaintiff recognizes, the ALJ summarized and considered the evidence produced after Dr. Bland's opinion and acknowledged the abnormalities in the medical record to which Plaintiff now appeals.

What Plaintiff really appears to be arguing is that the ALJ erred in the RFC he assessed after finding Dr. Bland's opinion generally persuasive because Plaintiff alleges a material change in Plaintiff's condition after Dr. Bland opined and the ALJ did not adequately account for that alleged material change in condition. The court disagrees.

As Plaintiff acknowledges, and as quoted above, the ALJ considered the evidence at issue here; summarized it, providing extensive pinpoint citations to the record; and explained why he discounted Plaintiff's allegations of symptoms and why he assessed the RFC he did.  (R. 19-20).  Plaintiff has not shown a material change in his condition after Dr. Bland opined and which was not considered and accounted for by the ALJ.  Plaintiff argues he reported an increase of symptoms, pursued and obtained additional treatment modalities, and received referrals to specialists, but all of that was considered and addressed by the ALJ.  While Plaintiff argues the ALJ cherry-picked and narrowly focused on evidence of normal findings and down-played abnormal findings, the ALJ specifically found Plaintiff's physical examinations revealed "only a few intermittent objective abnormalities," and that "he was often observed to have a normal gait and station, normal muscle bulk and tone with no atrophy, normal muscle strength, intact sensation, normal reflexes, good balance, and ability to walk on heels and toes and do a heel-to-toe walk."  (R. 19).  The ALJ provided extensive pinpoint citations which support his findings and cited to evidence controverting Plaintiff's allegations of limitations.  Id. He noted that Plaintiff's treatment was conservative and that the record evidence does not demonstrate that Plaintiff participated in certain treatment that was prescribed.  Id. at 19-20.  Plaintiff does not cite record evidence contrary to the ALJ's findings but argues he pursued further treatment from specialists which suggested a worsened condition.  But the specialist treatment records do not demonstrate greater functional limitations than do the earlier records.

A decision in a Social Security case is made based on the evidence before the ALJ on the date the hearing decision was issued.  If, after that date new evidence appears which is material and relates back to the period on or before the date of the hearing decision so as to demonstrate disability before that date, that evidence may be presented to the Appeals Council, 20 C.F.R. § 416.1476, or may be presented to the Federal Court. 42 U.S.C. § 405(g) (Sentence 6).  The record evidence does not demonstrate a material worsening of Plaintiff's condition not addressed by the ALJ and Plaintiff has not presented any new, material, chronologically relevant evidence to this court allegedly demonstrating greater functional limitations along with a request for remand for consideration of that evidence.  The court finds no error by the ALJ in this regard.

**B.**      **Plaintiff's Allegations of Disabling Symptoms**

Plaintiff also alleges the ALJ failed to explain why his allegations of symptoms were inconsistent with the record evidence.  (Pl. Br. 7).  He argues that in discounting his allegations of disabling symptoms, the ALJ "relied on the presence of some normal examination findings, [b]ut … failed to explain why some normal examination findings in conjunction with abnormal findings and imaging revealing moderate to severe abnormalities of the spine was inconsistent with [Plaintiff]'s allegations."  (Pl. Br. 13) (citing Kellams v. Berryhill, 696 F. App'x 909, 913-14 (10th Cir. 2017)).  Plaintiff argues the ALJ's error here is similar to that in Kellams:

> The ALJ recognized the diagnostic imaging and some examination findings consistent with [Plaintiff]'s allegations of limitations related to pain-producing impairments, which demonstrated both the presence of these impairments and the loose nexus between them and [Plaintiff]'s allegations.

> But the evidence the ALJ cited, even within such a limited view, did not support discounting [Plaintiff]'s allegations.

(Pl. Br. 13) (citing R. 17-22).

Once again, Plaintiff claims the ALJ "effectively downplay[ed] the severity and significance of" the imaging findings and cites abnormalities he cited earlier when claiming a material worsening of his condition. <u>Id.</u> at 14. He argues the medical records and his reports of functional limitations are consistent with his allegations. <u>Id.</u> Plaintiff argues the ALJ failed to address the limitations he alleged in performing daily activities. <u>Id.</u> 15. The Commissioner responds that the ALJ properly considered and discounted Plaintiff's allegations of symptoms as inconsistent with the record evidence. (Comm'r Br. 8-9).

### 1.      Standard for Evaluating Allegations of Symptoms

An ALJ's evaluations of a claimant's allegation of symptoms are generally treated as binding on review. <u>Talley v. Sullivan</u>, 908 F.2d 585, 587 (10th Cir. 1990); <u>Broadbent v. Harris</u>, 698 F.2d 407, 413 (10th Cir. 1983). Such "determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. <u>Wilson</u>, 602 F.3d at 1144; <u>accord</u> <u>Hackett</u>, 395 F.3d at, 1173. Therefore, in reviewing the ALJ's evaluations, the court will usually defer to the ALJ on matters involving witness allegations. <u>Glass v. Shalala</u>, 43 F.3d 1392, 1395 (10th Cir. 1994). However, such findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." <u>Wilson</u>, 602 F.3d at 1144

(quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at

1173 (same).

The Tenth Circuit has explained the analysis for considering subjective allegations

regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993)

(dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to
> establish disability.  Before the ALJ need even consider any subjective
> evidence of pain, the claimant must first prove by objective medical
> evidence the existence of a pain-producing impairment that could
> reasonably be expected to produce the alleged disabling pain.  This court
> has stated:  The framework for the proper analysis of Claimant's evidence
> of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We
> must consider (1) whether Claimant established a pain-producing
> impairment by objective medical evidence; (2) if so, whether there is a
> "loose nexus" between the proven impairment and the Claimant's
> subjective allegations of pain; and (3) if so, whether, considering all the
> evidence, both objective and subjective, Claimant's pain is in fact
> disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a

non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see

also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the
> attempts (medical or nonmedical) to obtain relief, the frequency of medical
> contacts, the nature of daily activities, subjective measures of credibility
> that are peculiarly within the judgment of the ALJ, the motivation of and
> relationship between the claimant and other witnesses, and the consistency
> or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[4]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii).

> ### 2.    *The ALJ's Findings Respecting Plaintiff's Symptom Allegations*

The ALJ found Plaintiff's allegations of disabling "symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons

---

[4] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529). Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 F. App'x. 542, 546 (10th Cir. 2017). Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on June 2, 2021, when this case was decided. Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

explained in this decision." (R. 18). He explained that although Plaintiff alleged

debilitating cardiac symptoms, his myocardial infarction was years in the past, he had

cardiac catheterizations and stent placements and records showed his heart condition was

stable. Id. The ALJ found,

> Aside from these isolated incidents requiring stenting, the claimant has only
> rarely mentioned any cardiac symptoms such as fatigue or chest pressure,
> and his physical examinations have been largely normal, with repeated
> observations of a regular heart rate and rhythm, no murmurs, rubs, clicks,
> or gallops, no clubbing or cyanosis, normal capillary refill, and normal
> peripheral pulses. The evidence of record as a whole is not consistent with
> the extent of debilitation the claimant alleged due to his coronary artery
> disease.

Id. at 18-19 (extensive pinpoint citations to the record omitted).

In the ALJ's summary of the record evidence respecting degenerative changes in

Plaintiff's back, quoted supra at 6-7, he noted numerous inconsistencies between the

record evidence and Plaintiff's allegations of disabling pain. He noted "only a few

intermittent objective abnormalities," and cited the pain management provider's note

"that while he was reporting his pain as an 8 out of 10 at that time, he was 'able to sit

completely still during triage, converse with ease and shows no signs/symptoms of acute

pain or distress such as facial grimacing, etc.'" (R. 19) (quoting Ex. B36F, p.15). He

noted that although Plaintiff reported using a cane all the time, every day, he told his

physician he only used a cane intermittently, and the record provided no indication that a

cane was prescribed and there were no findings on examination to support Plaintiff's

claimed need. Id. He noted Plaintiff only required conservative treatment for his back

pain, the record showed no follow-up for thoracic radiofrequency ablation, Plaintiff did

not return to the pain clinic after March 2020, Plaintiff admitted he did not schedule his prescribed physical therapy, and no records show he ever had injections in his lumbar spine.  (R. 19-20).   The ALJ found the record evidence is inconsistent with the extent of debilitation Plaintiff alleged from his knee impairments.  Id. 20.

Regarding vascular reflux in Plaintiff's legs, the ALJ noted Plaintiff's report that it was "all but resolved," his edema was never subsequently observed to be as severe as before his ablation therapy, he had many physical examinations which reported no edema, and he refused to wear his compression stockings.  Id.  The ALJ noted Plaintiff reported he quit working because he was laid off, not because he was unable to work and, finally,

> he has reported daily activities that are less restricted than expected given the degree of limitation he alleged.  For instance, he stated that he sees to his personal care without difficulty, does not need reminders for his personal needs and grooming or medications, prepares meals daily, does household chores such as dishes and sweeping, shops in stores for groceries, manages his own finances, and worked for the Salvation Army for five weeks in November and December of 2020.

Id. 21 (emphasis added).

### 3.   *Analysis*

As noted above, the ALJ followed the legal standard applicable in the Tenth Circuit and cited numerous inconsistencies between Plaintiff's allegations of symptoms and the record evidence, explaining his bases for discounting Plaintiff's allegations of disabling symptoms.  More is not required.  Plaintiff argues, "that the ALJ's decision 'must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual

and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.'"  (Pl. Br. 12) (quoting SSR 16-3p; and citing <u>A.B. v. Saul</u>, No. 20-1114-SAC, 2020 WL 7714408, at *3 (D. Kan. Dec. 29, 2020)).  He then argues, "the ALJ failed to explain why some normal examination findings in conjunction with abnormal findings and imaging revealing moderate to severe abnormalities of the spine was inconsistent with [Plaintiff]'s allegations."  <u>Id.</u> at 13 (citing <u>Kellams</u>, 696 F. App'x at 913-14 (10th Cir. 2017)).

Plaintiff is correct that the decision must contain specific reasons for the weight accorded his symptoms, which are consistent with and supported by the evidence, and clearly articulated.  As evidenced above, that is precisely what the ALJ did in this case. <u>A.B. v. Saul</u> does not require more.  There, the court found error because "the ALJ basically limited his evaluation of plaintiff's fatigue to the following statement: 'While there is little in the medical records to support her allegations, the undersigned has taken into consideration the claimant's subjective complaints regarding her ongoing fatigue and chronic pain and limited the claimant's work to sedentary work.'" <u>A.B. v. Saul</u>, 2020 WL 7714408, at *3.  Such brief and conclusory rationale was not present in this case.  Nor does the decision in <u>Kellams</u> suggest error here.  In <u>Kellams</u>, the court noted the ALJ found the objective diagnostic evidence, the exam findings, the claimant's treatment history, and his daily activities were inconsistent with his allegations.  969 F. App'x 914-16.  The court found, citing considerable evidence, that the record evidence did not support the ALJ's findings.  <u>Id.</u>  Here, the court finds the ALJ fairly reviewed and summarized the evidence which was extensively cited and supports his findings.

Plaintiff has shown no error in the Commissioner's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated February 23, 2023, at Kansas City, Kansas.




s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**